```
              UNITED STATES DISTRICT COURT
                        FOR THE
                  DISTRICT OF VERMONT


United States of America    :
                            :
     v.                     :     File No. 1:05-CR-12
                            :
Darrell K. Phillips         :
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Paper 99)

Defendant Darrell Phillips, proceeding *pro se*, has submitted a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  In March 2006, Phillips pleaded guilty to bank robbery.  The Court subsequently sentenced him to 50 months in prison to be followed by three years of supervised release.  Phillips now argues that his conviction and sentence should be vacated on the basis of ineffective assistance of counsel.  For the reasons set forth below, I recommend that the motion (Paper 99) be DENIED.

### Factual and Procedural Background

At his Change of Plea hearing, Phillips admitted to the following facts.  On December 20, 2004, a man robbed a Merchants Bank on Shelburne Road in South Burlington, Vermont.  Wearing a face mask and sunglasses, the man pointed a long, black-barreled gun at one of the tellers and demanded that money be placed in a red, soft-sided plastic

cooler.  When the teller turned and fled to the back of the bank, the man demanded money from a second teller and told her repeatedly to "hurry up."  Two tellers put a total of approximately $2,200 in the cooler, including a pack of currency with red serial numbers.  The man then ran out of the bank and got into the passenger's seat of a red Honda.  The car drove away, but not before witnesses were able to record the license plate number.

   At approximately 7:30 that evening, police located the car and contacted the FBI.  Two FBI agents arrived shortly thereafter, and the man in the red Honda was identified as Shayne Turner.  After agents discovered some of the stolen money in his pocket, Turner admitted to having driven the car during the robbery and named Phillips as his accomplice.

   The agents accompanied Turner back to his apartment, where they recovered a long, black-barreled BB gun, a red cooler with sunglasses in the side pocket, a tan jacket, black gloves and two face masks.  Surveillance videos revealed that the recovered items were worn during the robbery, and Turner admitted to having worn the second mask.

   While the agents were at the apartment, Turner's phone rang.  The call was from Phillips, who told Turner that he

was at a nearby restaurant.  The agents went to the restaurant, arrested Phillips, and found that he was carrying six twenty-dollar bills stolen from the bank.  He was also carrying a receipt for clothes purchased with cash after the time of the robbery.

After obtaining a warrant, agents searched Phillips' apartment and found six face masks identical to the two found in Turner's apartment.  They also found a receipt for the same type of sunglasses used in the robbery.  The two face masks recovered from Turner's apartment were later subjected to DNA analysis by the Vermont forensics laboratory, and one of the masks matched Phillips' DNA. (Paper 109-3 at 7-10).

Nearly one year later, on November 29, 2005, Phillips was arraigned.  At the arraignment, Thomas Sherrer, Esq., as court-appointed counsel for the defense, explained that the delay was caused, in part, by the need for a competency evaluation.  After an initial evaluation was conducted, the defense requested a separate evaluation.  At the time of the arraignment, the report from the second evaluation was not yet complete, although Attorney Sherrer reported to the Court his understanding that "it doesn't appear there is a

competency issue." (Paper 109-2 at 3).

Sherrer also informed the Court that his client wished to proceed with different counsel. Sherrer stated that he and his client had been experiencing difficulties communicating, in part because Phillips was incarcerated in New Hamsphire. Sherrer also explained that "I felt somewhat stimied [sic] because we couldn't really, I didn't feel we could really go forward until we knew what was going on with the competency and sanity issues. And [Phillips] very much wanted to be pursuing other avenues. And so there was this sort of conflict." Id. at 4. Despite differences with his client, Sherrer expressed a willingness to remain as Phillips' attorney.

Phillips also addressed the Court at the arraignment, expressing frustration that counsel had not been working harder to prove his innocence. Id. at 5-6. The Court informed Phillips that, in its opinion, Sherrer was a "very competent" attorney, and that appointment of a second attorney would mean additional delays. The Court therefore asked Phillips to reconsider. After listening to the Court's input, Phillips acknowledged that Attorney Sherrer is "a good man" and stated his desire to "stay with him."

4

Id. at 7.

On March 8, 2006, Phillips pleaded guilty to the robbery.  At the Change of Plea hearing, he admitted the facts of the robbery set forth above.  When the Court asked whether he had, in fact, committed the robbery, Phillips responded, "Yes, Your Honor."  (Paper 109-3 at 10). Phillips also informed the Court that he had been satisfied with the representation and advice provided to him by Attorney Sherrer.  Id. at 18.

On June 8, 2006, Attorney Sherrer filed a motion to withdraw (Paper 72) but, according to the government, withdrew the motion at a hearing a week later.  At the sentencing hearing, held on June 26, 2006, the Court granted the defendant's motion for a downward departure based upon Phillips' mental impairment, and imposed a sentence of 50 months to be followed by three years of supervised release.

On December 19, 2006, Phillips filed a notice of appeal.  While his appeal was pending, he filed a motion to vacate pursuant to 28 U.S.C. § 2255.  Because of the pending appeal, the Court dismissed the motion as premature.  After the Second Circuit denied Phillips' appeal as untimely, this Court granted his motion to re-open the § 2255 motion.  That

motion is currently before the Court.

## Discussion

I. <u>Habeas Corpus Standard</u>

To prevail in a habeas corpus motion under § 2255, a defendant must demonstrate (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255. Phillips argues that Attorney Sherrer failed to provide effective assistance of counsel as required under the Sixth Amendment.  A claim for ineffective assistance of counsel may be brought regardless of whether it was raised on direct appeal.  <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

II. <u>Ineffective Assistance of Counsel</u>

"[T]he proper standard for attorney performance is that of reasonably effective assistance."  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered

unfair and the verdict rendered suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. See Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  More specifically, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result."  Strickland, 466 U.S. at 687; see also United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).  In conducting the ineffective assistance inquiry, the Court must maintain a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.  The Court should recognize that counsel is strongly presumed to have

rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment.  See id. at 690.

To satisfy the prejudice prong, the petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding might have been different."  Id. at 693-94.  When a conviction results from a guilty plea, the evidence must demonstrate a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Phillips claims that Attorney Sherrer urged him to plead guilty based upon the potential of a significant sentence if the case went to trial.  In Phillips' words, Sherrer "threatened me with 30 even 40 years for a crime I didn't commit."  (Paper 110 at 1).  Phillips also criticizes Sherrer's alleged failure to develop and present a defense.  Specifically, he contends that several facts could have been presented to prove his innocence, including: a witness at the bank who did not see a gun and did not know that a robbery was taking place "because people wear winter head

gear in the middle of blizzards"; the fact that the person who recorded the license on the getaway car had a long criminal record; the question of why law enforcement did not go to Turner's apartment after they had his license number; the fact that none of Turner's roommates saw Phillips at Turner's apartment (Paper 110 at 2-3); and the question of why law enforcement searched Phillips' apartment after they had "found all the evidence at [Turner's] house." (Paper 99-3 at 2).

Phillips insists that "from the beginning" he asked Sherrer to investigate his innocence, but that Sherrer never did so. He eventually wanted to dismiss Sherrer and obtain new counsel, but felt that the Court gave him no choice. (Paper 99 at 2). He claims that at the Change of Plea hearing the Court asked only two questions: "(1) Do you like Mr. Sherrer? . . . [and] (2) Is Mr. Sherrer a good man?", and that he responded in the affirmative to both. Id. at 1. "I never made a decision to keep Mr. Sherrer. It was the Court's order. I never had a choice and I never had a defense." Id. at 2.

Several of Phillips' claims are in direct conflict with statements he made to the Court prior to his sentencing. At

the Change of Plea, while under oath, Phillips admitted to the facts of his crime.  When asked directly whether he had committed the robbery, Phillips condeded that he had.  (Paper 109-3 at 10).  He was informed by the Court that the maximum sentence for his crime was 20 years in prison (not the 30 to 40 years he claims Sherrer used to coerce him into a plea), and stated that no one had made any threats or statements to convince him to plead guilty.  Id. at 9-10, 15.  Phillips also assured the Court that he was satisfied with Attorney Sherrer's efforts on his behalf.  Id. at 17.

Statements made at a plea allocution carry "a strong presumption of verity," and representations made at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Indeed, such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (citing cases).  Despite Phillips' claim that he was threatened with a significant sentence if he did not plead guilty, his statements to the Court prior to his guilty plea show no undue pressure by either the Court or defense counsel.  The facts of the

offense, as communicated to the Court by the government, were admitted, and Phillips acknowledged that he was satisfied with his representation.  Accordingly, Phillips' contradictory assertions in his § 2255 motion do not support a finding that Sherrer's performance was constitutionally ineffective.

Furthermore, Phillips has not shown that Sherrer's advice prejudiced the outcome.  The evidence collected from the two apartments, as well as the money and receipt found on Phillips at the time of his arrest and the subsequent DNA testing, weighed heavily in favor of a conviction.  Add to this physical evidence the fact that Phillips was identified by his accomplice, and it is easy to understand why counsel so vigorously pursued a competency defense.

Having already admitted guilt, Phillips raises questions about the government's case, though none of those questions comes close to establishing his innocence. Briefly stated, Phillips claims that one witness was confused, while another had a criminal record.  He also questions why the FBI went to his apartment when they had sufficient evidence from Turner's apartment, and why none of Turner's roommates had seen him in their apartment.  Viewed

objectively, these issues, if pursued and proven, would not have overcome the evidence assembled by the government.

Consequently, Phillips has failed to prove that, but for Sherrer's alleged statements about a potential sentence, he would not have entered into a plea agreement. Although Phillips claims that Sherrer threatened a sentence of 30 to 40 years, the Court informed him prior to his guilty plea that the maximum sentence was 20 years, and accepted his sworn statements (1) that he had not been either threatened or coerced and (2) that he was satisfied with Sherrer's representation. The evidence against Phillips was substantial, and the Court should find that Sherrer's advice to his client – to plead guilty and accept a sentence well below the maximum – was within the range of reasonable professional assistance.

As a final note, Phillips' claim that the Court forced him to retain Attorney Sherrer as counsel is not supported by the record. At the arraignment, the Court informed Phillips that he was "being represented by a very competent lawyer who knows what he's doing," and that a different lawyer might very well give the same advice he was receiving from his current counsel. The Court also suggested that a

new attorney might result in further delays, and "urged" Phillips to reconsider his request for a new attorney. Phillips responded:

> PHILLIPS: "I know Mr. Sherrer's a good man. You know, I'm not doubting that one bit. Um, you know I just, I've been very frustrated. Um, you know, I don't know, I don't know about the law, you know."
>
> THE COURT: Right. Well that's right. That's why you have a lawyer. Right?
>
> PHILLIPS: Yeah. I would, I would like to stay with him.
>
> THE COURT: Pardon me?
>
> PHILLIPS: I would like the stay with Tom [Sherrer].
>
> THE COURT: All right. Well I think that's probably a good decision.

(Paper 109-2 at 6-7). There is no indication in this colloquy, or anywhere else in the recorded transcripts, that the Court ordered Phillips to retain Sherrer as his attorney. His argument on this point is, therefore, without merit.

## Conclusion

For the reasons set forth above, I recommend that

Phillips' motion (Paper 99), brought pursuant to 28 U.S.C. § 2255, be DENIED.

Dated at Burlington, in the District of Vermont, this 7th day of March, 2008.

```
                              /s/ Jerome J. Niedermeier
                              Jerome J. Niedermeier
                              United States Magistrate Judge
```

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).